## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JOHN MICHAEL WARREN** | ) | |
| **1144 Springwater Drive** | ) | |
| **Mandeville, LA 70471** | ) | |
| **DEBORAH COTE** | ) | |
| **17108 Vardon Terrace** | ) | |
| **Bradenton, FL 34211** | ) | |
| **ANDREW BUNENKO** | ) | |
| **1331 Seabridge Lane** | ) | |
| **Oxnard, CA 93035** | ) | |
| **MOHAMED YOUSSEF AMIN BRIHMAT** | ) | |
| **27 Golden Ave. Apt. F02** | ) | |
| **Deer Park, NY 11729** | ) | |
| **on behalf of themselves and all others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CASE NO.: 1:26-cv-00556-MJS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANAHER CORPORATION** | ) | |
| **2200 Pennsylvania Avenue NW, Suite 800W** | ) | |
| **Washington DC 20037** | ) | |
| **BECKMAN COULTER, INC.** | ) | |
| **250 S Kraemer Blvd** | ) | |
| **Brea, CA 92821** | ) | |
| **INTEGRATED DNA TECHNOLOGIES, INC.** | ) | |
| **1710 Commercial Park** | ) | |
| **Coralville, IA 52241** | ) | |
| **PALL CORPORATION** | ) | |
| **25 Harbor Park Drive** | ) | |
| **Port Washington, NY 11050** | ) | |
| **CYTIVA** | ) | |
| **100 Results Way** | ) | |
| **Marlborough, MA 01752** | ) | |
| **ABCAM** | ) | |
| **152 Grove Street, Suite 1100** | ) | |
| **Waltham, MA 02453** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants Beckman Coulter, Inc., Integrated DNA Technologies, Inc., Pall Corporation, Cytiva, Abcam, and improperly named Danaher Corporation, by undersigned counsel, hereby move this Court to dismiss Plaintiffs' Complaint.[1]  In support of this Motion, Defendants respectfully refer the Court to the accompanying Statement of Points and Authorities.

WHEREFORE, Defendants request that the Court:

1.  Grant Defendants' Motion and dismiss Plaintiffs' Complaint; and

2.  Grant Defendants such other and further relief as the Court may deem proper.

---

[1] Defendants Beckman Coulter, Inc., Integrated DNA Technologies, Inc., Pall Corporation, Cytiva, and Abcam specially appear for purposes of making this Motion.  As argued in the accompanying Statement of Points and Authorities, these Defendants maintain that the Court lacks personal jurisdiction over them, and any limited litigation activity of these Defendants to date shall not be construed as a waiver, including this Motion.  *See, e.g., Lemon v. Kramer*, 270 F. Supp. 3d 125, 138 (D.D.C. 2017) (ruling that "Defendants have not waived their right to challenge this Court's personal jurisdiction by appearing before the Court to file a motion to dismiss").

Dated:  May 29, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By:  */s/ Samantha L. Brooks*
Samantha L. Brooks, DC Bar 1033641
sbrooks@seyfarth.com
SEYFARTH SHAW LLP
975 F. Street, N.W.
Washington, DC  20004
Telephone:    (202) 463-2400
Facsimile:     (202) 828-5393

Christopher J. DeGroff, *pro hac vice forthcoming*
CDeGroff@seyfarth.com
Michael D. Jacobsen, *pro hac vice forthcoming*
mjacobsen@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Chicago, Illinois  60606
Telephone:    (312) 460-5000
Facsimile:     (312) 460-7000

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true copy of the foregoing Defendants' Motion To Dismiss was filed by

CM/ECF, this 29th day of May 2026, with electronic notification to all counsel of record.


By:  */s/ Samantha L. Brooks*

Samantha L. Brooks, DC Bar 1033641
sbrooks@seyfarth.com
SEYFARTH SHAW LLP
975 F. Street, N.W.
Washington, DC  20004
Telephone:    (202) 463-2400
Facsimile:    (202) 828-5393

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JOHN MICHAEL WARREN** ) | |
| **1144 Springwater Drive** ) | |
| **Mandeville, LA 70471** ) | |
| **DEBORAH COTE** ) | |
| **17108 Vardon Terrace** ) | |
| **Bradenton, FL 34211** ) | |
| **ANDREW BUNENKO** ) | |
| **1331 Seabridge Lane** ) | |
| **Oxnard, CA 93035** ) | |
| **MOHAMED YOUSSEF AMIN BRIHMAT** ) | |
| **27 Golden Ave. Apt. F02** ) | |
| **Deer Park, NY 11729** ) | |
| **on behalf of themselves and all others** ) | |
| **similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | **CASE NO.: 1:26-cv-00556-MJS** |
| ) | |
| **v.** ) | |
| ) | |
| **DANAHER CORPORATION** ) | |
| **2200 Pennsylvania Avenue NW, Suite 800W** ) | |
| **Washington DC 20037** ) | |
| **BECKMAN COULTER, INC.** ) | |
| **250 S Kraemer Blvd** ) | |
| **Brea, CA 92821** ) | |
| **INTEGRATED DNA TECHNOLOGIES, INC.** ) | |
| **1710 Commercial Park** ) | |
| **Coralville, IA 52241** ) | |
| **PALL CORPORATION** ) | |
| **25 Harbor Park Drive** ) | |
| **Port Washington, NY 11050** ) | |
| **CYTIVA** ) | |
| **100 Results Way** ) | |
| **Marlborough, MA 01752** ) | |
| **ABCAM** ) | |
| **152 Grove Street, Suite 1100** ) | |
| **Waltham, MA 02453** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants Beckman Coulter, Inc. ("Beckman Coulter"), Integrated DNA Technologies, Inc. ("Integrated DNA Technologies"), Pall Corporation ("Pall"), Cytiva, Abcam, and improperly named Danaher Corporation ("Danaher") respectfully submit this Statement of Points and Authorities in support of their Motion to Dismiss.

**PRELIMINARY STATEMENT**

Defendants' Motion should be granted and this matter dismissed because Plaintiffs assert sprawling nationwide discrimination collective/class claims but fail to offer even the basic facts and legal elements necessary to support them.

Plaintiffs are a handful of individuals who are over age 40, applied for jobs with several different entities, and were not hired. Plaintiffs do not allege facts -- they speculate. Relying solely on "information and belief," they ask the Court to assume that unnamed, "substantially younger" individuals who were no more qualified than they were hired instead, an assertion devoid of any factual support. Based on what amounts to a hunch, Plaintiffs posit that they were subjected to age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and various state laws. But Plaintiffs fail to plead sufficient facts to create a plausible inference that they were discriminated against. Nor do they specify a single person, practice or policy that was the source of the alleged discrimination.

Though they lack facts, Plaintiffs nevertheless ask this Court to certify four nationwide classes of individuals age 40+ who were not hired by Defendants—separate and distinct entities and employers following their own separate and distinct processes to fill separate and distinct roles—as well as a nationwide collective of individuals age 40+ who were not hired by any of the Defendants or any of a dozen other different entities and employers that Plaintiffs point to

1

though they have not named them as parties to this case. Plaintiffs attempt to justify their overreaching Complaint with a thin series of speculative and conclusory allegations that fail to support their individual claims—let alone sustain this matter as a nationwide class or collective action.

This case has a telling backstory. In 2025, the same attorneys who represent Plaintiffs here filed another ADEA collective action against Pall and Danaher on behalf of a different plaintiff: *Critelli, et al. v. Danaher Corporation, et al.*, Case No. 6:25-cv-01780-AGM-LHP (M.D. Fla.) ("*Critelli*"). (*See* Exhibit A.)[2] Plaintiff James Critelli ("Critelli"), a former Pall employee, alleged that he "was subjected to unlawful discrimination based upon his sex, race and age." (Exhibit A, p. 1, ¶ 74.) Along with a proposed ADEA collective of age 40+ applicants, Critelli sought to represent two putative Rule 23 classes of male and/or Caucasian applicants. (*Id.*, ¶¶ 93-94, 111.) As questionable as *Critelli's* sex and race discrimination claims were pled, the age discrimination claims were even more fatally flawed. In support of the putative ADEA collective, the *Critelli* complaint merely asserted that the defendants "also discriminate[] against applicants and employees over the age of 40, hiring and promoting younger employees over older workers." (*See, e.g., id.*, p. 1, ¶ 111.) Critelli did not bother to include any purported facts supporting this claim, exposing it for what it is: an afterthought to an already sweeping kitchen-sink theory.

---

[2] The plaintiffs in *Critelli* noted this case in their Notice of Pendency of Other Actions. (*See* Exhibit B, p. 2.) Defendants respectfully request that the Court take judicial notice of the attached *Critelli* pleadings, as they are a matter of public record on another court's docket. *See U.S. v. Myers*, Case No. 18-cr-39 (CRC), 2022 WL 103177, at *4 n.3 (D.D.C. Jan. 11, 2022) ("The Court takes judicial notice of the D.C. Superior Court docket and filings, which are public records.").

2

In 2026, Critelli filed an amended complaint that jettisoned the age discrimination claims. (*See* Exhibit C.)  Unfortunately, the claims were not put aside forever as they should have been, but merely put in a holding pattern until they could try to find a new home.  Weeks after the original *Critelli* complaint was filed, Plaintiffs began to file a series of Charges of Discrimination ("Charges") with the U.S. Equal Employment Opportunity Commission ("EEOC") and corresponding state agencies.  Like Critelli in his original complaint, most Plaintiffs (except Plaintiff Deborah Cote) submitted blunderbuss Charges that they were subjected to discrimination based on their sex, race, and age.  Then, they all became the "age discrimination Plaintiffs" and filed this lawsuit.  Plaintiffs here have tried to dress up the age discrimination claims in *Critelli* by tacking on buzzwords like "AI applications" and "Workday."  Like *Critelli*, however, there remains no basis for Plaintiffs' claims—only mere speculation without a shred of evidence.[3]

Ultimately, Plaintiffs' Complaint is fatally flawed in several crucial respects.

First, Danaher is not a proper defendant.  Plaintiffs never applied for employment with Danaher.  Rather, Plaintiffs applied to Beckman Coulter, Integrated DNA Technologies, Pall, Cytiva, and/or Abcam—each of which is a distinct entity that exercised its own independent authority over hiring, management, and termination decisions.  Plaintiffs do not plead any facts that, accepted as true, would sufficiently demonstrate that Danaher was the alleged "employer" for purposes of their claims.  Instead, they assert only conclusory "integrated enterprise" and/or

---

[3] The same attorneys who represent Plaintiffs here also filed another putative class action against many of the same Defendants alleging race and gender discrimination in hiring: *Nadeau, et al. v. Danaher Corporation, et al.*, Case No. 1:26-cv-00923-MJS (D.D.C.) ("*Nadeau*").  (*See* Exhibit D.)  The plaintiffs *Nadeau* noted this case in their Notice of Related Case.  (*See* Exhibit E.)  Defendants respectfully request that the Court take judicial notice of the attached *Nadeau* pleadings, as they are a matter of public record on another court's docket.  *See U.S.*, 2022 WL 103177, at *4 n.3.

3

"joint employer" theories that this Court should not accept without more than buzzwords. Plaintiffs' claims against Danaher should be dismissed.

Second, this Court lacks either general or specific personal jurisdiction over the non-Danaher Defendants (Beckman Coulter, Integrated DNA Technologies, Pall, Cytiva, and Abcam), revealing that the inclusion of improperly named Danaher is the only hook keeping this case in this Court. Beckman Coulter is a Delaware company, headquartered in California; Integrated DNA Technologies is a Delaware company, headquartered in Iowa; Pall is a New York company, headquartered in New York; Cytiva is a Delaware company, headquartered in Massachusetts; and Abcam is a Massachusetts company, headquartered in Massachusetts. Accordingly, there is no basis for general jurisdiction over any of these Defendants in this Court. And specific personal jurisdiction is also unavailable because these Defendants engaged in no relevant activities within the District of Columbia. Thus, Plaintiffs' claims against these Defendants should be dismissed as well.

Third, Plaintiffs Deborah Cote and Andrew Bunenko do not allege that they have exhausted their state law claims, nor have they provided any evidence that they have done so. Accordingly, these claims must be dismissed on their face.

Fourth, Plaintiffs' conclusory allegations are so threadbare and improperly based on "information and belief" that Plaintiffs do not state plausible age discrimination claims under the pleading standards set forth by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"). Since Plaintiffs' individual claims cannot meet these controlling standards, they should be dismissed in their entirety.

Fifth, even if Plaintiffs could show that they could state individual claims for themselves under the ADEA, they fail to allege any facts to plausibly support a collective action.  Rather, Plaintiffs' Complaint contains little more than a handful of conclusory allegations asserting, without explanation, that Defendants violated the ADEA by maintaining unspecified "hiring policies and practices" that favor "younger applicants" and "weed[ing] out older applicants" through "Workday and other AI applications."  (Complt., ¶¶ 1, 6, 37.)  Such bare-boned allegations also fail under the *Twombly* and *Iqbal* pleading standards.  As a result, this Court should dismiss Plaintiffs' ADEA collective.

Finally, Plaintiffs' class allegations likewise should be dismissed because Plaintiffs have failed to allege facts to support even the most basic requirements of Fed. R. Civ. P. 23, once again falling short of the governing pleading standards.

For these reasons, Plaintiffs' Complaint must be dismissed in its entirety.

<b>FACTS PLEAD IN THE COMPLAINT[4]</b>

**I.    PLAINTIFFS' COMPLAINT**

Plaintiff John Michael Warren ("Warren") is 59.  (*Id*., ¶ 41.)  On or about January 29, 2025, he applied for the position of Key Account Manager with Beckman Coulter.  (*Id*., ¶ 42.)  Beckman Coulter did not hire Warren for the position.  (*Id*., ¶ 44.)  Warren claims age discrimination under the ADEA and the Louisiana Employment Discrimination Law ("LEDL").  (*Id*., ¶¶ 100-06, 113-18.)

Plaintiff Deborah Cote ("Cote") is 61.  (*Id*., ¶ 47.)  On or about March 14, 2025, she applied for the position of Key Account Manager with Integrated DNA Technologies.  (*Id*., ¶

---

[4] Defendants assume the truth of Plaintiffs' well-pled factual allegations for purposes of this Motion only.

5

48.) Integrated DNA Technologies did not hire Cote for the position. (*Id.*, ¶ 50.) Cote claims age discrimination under the ADEA and Florida Civil Rights Act ("FCRA"). (*Id.*, ¶¶ 100-12.)

Plaintiff Andrew Bunenko ("Bunenko") is 66. (*Id.*, ¶ 51.) He applied for the positions of: (a) Senior Sales Manager at Beckman Coulter on or about June 25, 2025; (b) Regional Sales Manager at Pall on or about September 2, 2025; (c) Global Strategic Account Director at Cytiva on or about October 23, 2025; and (d) Director of Sales at Abcam on or about October 15, 2025. (*Id.*, ¶ 52.) Bunenko was not hired for these positions. (*Id.*, ¶ 54.) Bunenko claims age discrimination in violation of the ADEA and the California Fair Employment and Housing Act ("FEHA"). (*Id.*, ¶¶ 100-06, 119-24.)

Plaintiff Mohamed Youssef Amin Brihmat ("Brihmat") is 60. (*Id.*, ¶ 56.) He applied for the positions of: (a) North America Sales Leader at Pall on or about April 24, 2025; and (b) Senior Sales Manager at an unspecified entity on or about June 23, 2025. (*Id.*, ¶ 57.) Brihmat was not hired for these positions. (*Id.*, ¶ 59.) Brihmat claims age discrimination under the ADEA and the New York State Human Rights Law ("NYSHRL"). (*Id.*, ¶¶ 100-06, 125-30.)

Put side by side, the allegations show that there is no overlap among Plaintiffs, with each applying to separate and distinct companies for separate and distinct roles.

| Plaintiff | Company | Position |
|---|---|---|
| Warren | Beckman Coulter (*Id.*, ¶ 42) | Key Account Manager (*Id.*) |
| Cote | Integrated DNA Technologies (*Id.*, ¶ 48) | Key Account Manager (*Id.*) |
| Bunenko | Beckman Coulter (*Id.*, ¶ 52) | Senior Sales Manager (*Id.*) |
| Bunenko | Pall (*Id.*) | Regional Sales Manager (*Id.*) |
| Bunenko | Cytiva (*Id.*) | Global Strategic Account Director (*Id.*) |
| Bunenko | Abcam (*Id.*) | Director of Sales (*Id.*) |
| Brihmat | Pall (*Id.*, ¶ 57) | North America Sales Leader (*Id.*) |
| Brihmat | Unknown (*Id.*) | Senior Sales Manager (*Id.*) |

## II.    PLAINTIFFS' CHARGES[5]

On October 28, 2025, Warren filed Charges against Beckman Coulter and Danaher with the EEOC and the Louisiana Commission on Human Relations.  (Exhibits F & G.)  Warren alleged in both Charges that he was not hired "because of his race, sex and age (over 40)" and "due to Respondent's discriminatory animus."  (*Id.*, p. 1.)  He asserted that he was "subjected to discrimination based on race, sex, and age."  (*Id.*)  The EEOC issued Warren notice of his right to sue with respect to his Charge against Beckman Coulter on December 10, 2025, and his Charge against Danaher on April 13, 2026.  (*See* Exhibits H & I.)

On November 3, 2025, Bunenko filed Charges against Beckman Coulter, Pall, Cytiva, Abcam, and Danaher with the EEOC and the California Civil Rights Department.  (Exhibits J-N.)  Bunenko alleged in all of his Charges that he was not hired "because of his race, sex and age (over 40)" and "due to Respondent's discriminatory animus."  (*Id.*, p. 1.)  He asserted that he was "subjected to discrimination based on race, sex, and age . . . ."  (*Id.*)  The EEOC issued Bunenko notice of his right to sue with respect to his Charges against Cytiva and Abcam on November 21, 2025, his Charge against Beckman Coulter on December 10, 2025, his Charge against Danaher on April 13, 2026, and his Charge against Pall on April 30, 2026.  (*See* Exhibits O-S.)

On December 1, 2025, Brihmat filed a Charge against Danaher with the EEOC and the New York Division of Human Rights.  (Exhibit T.)  Brihmat alleged in his Charge that he was not hired "because of his race, sex and age (over 40)" and "due to Respondent's discriminatory animus."  (*Id.*, p. 1.)  He asserted that he was "subjected to discrimination based on his race, sex

---

[5] Although Plaintiffs did not attach copies of these documents to their Complaint, the Court may consider these documents without converting this Motion into a motion for summary judgment because they are referenced and incorporated into the Complaint.  (*See id.*, ¶¶ 12-15); *see also Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 319 n.9 (D.D.C. 2016).

and age . . . ."  (*Id*.)  The EEOC issued Brihmat notice of his right to sue on April 13, 2026.  (*See* Exhibit U.)

On December 19, 2025, Cote filed a Charge against Danaher with the EEOC and the Florida Commission on Human Relations.  (Exhibit V.)  Cote alleged in her Charge that she was not hired "because of her age (over 40)" and "due to Respondent's discriminatory animus."  (*Id*., p. 1.)  She asserted that she was "subjected to discrimination based on age. . . ."  (*Id*.)  The EEOC issued Cote notice of her right to sue on April 13, 2026.  (*See* Exhibit W.)

**ARGUMENT**

## I.     STANDARD OF REVIEW

### A.     Rule 12(b)(6) – Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "[F]acial plausibility" means the complaint's facts must allow for a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard" thus "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Thus, at this stage the Court need not accept as true "legal conclusions couched as factual allegations." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016).  Also, the Court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint[,] matters subject to judicial notice," or documents "incorporated by reference into the complaint." *See Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 43-44 (D.D.C. 2019).

8

### B.    Rule 12(b)(2) – Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Collingsworth v. Drummond Co. Inc.*, Civil Action No. 19-1263 (ABJ), 2020 WL 2800612, at *5 (D.D.C. May 29, 2020).  To survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts" and "cannot rely on conclusory allegations . . . ." *Id*.  Moreover, the court "need not treat all of the plaintiff's jurisdictional allegations as true." *Id*.  Rather, it may consider "material outside of the pleadings" and "receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id*.  If a plaintiff's "allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof" and "the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *see also Prousalis v. Van Krevel*, No. 81-2257, 1982 WL 1564, at *3 (D.D.C. Jan. 15, 1982) (citing *McNutt*, 298 U.S. at 189).

## II.    THE CLAIMS AGAINST DANAHER MUST BE DISMISSED BECAUSE NONE OF THE PLAINTIFFS APPLIED FOR WORK AT THAT COMPANY AND IT IS NOT AN INTEGRATED ENTERPRISE OR JOINT EMPLOYER WITH THE OTHER DEFENDANTS.

Danaher is not a proper defendant in this case.  Plaintiffs speculate that Danaher and its operating companies constitute an "integrated enterprise," or that Danaher is a "joint-employer" of these companies' employees.  (Compl., ¶¶ 30-31.)  Plaintiffs plead no facts regarding Danaher's status as an integrated enterprise or a joint employer that could support their conclusion.  Even under the most lenient of pleading standards, this simply is not enough.

A company may be deemed a joint employer "if it ''retain[s] for itself sufficient control of the terms and conditions'' of [ ] employment." *Doe v. Lee*, No. 19-cv-0085 (DLF), 2020 WL

9

759177, at *7 (D.D.C. Feb. 14, 2020) (quoting *Redd v. Summers*, 232 F.3d 933, 938 (D.C. Cir. 2000)).  In the employment discrimination context, this requires an examination of "the degree of control that the purported employer has over the employment relationship," such as the "right to hire, fire, assign, or direct and control" the employees.  *Mohamed v. George Washington Univ.*, Case No. 1:22-cv-00812 (TNM), 2022 WL 3211806, at *2 (D.D.C. Aug. 9, 2022); *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 287 n.8 (D.D.C. 2017).

Courts will dismiss a complaint alleging joint employment where the plaintiff does not "plead facts which, if proven true, would plausibly suggest" that such a relationship exists.  *See Doe*, 2020 WL 759177, at *7, *10.  In *Doe*, the court granted a motion to dismiss where the complaint "contain[ed] no allegations that [the alleged joint employer] controlled the terms and conditions of [the plaintiff's] employment."  *Id*. at *7-8, *10.  Nor did the complaint "suggest that [the alleged joint employer] had any authority to hire, fire, promote, discipline or supervise" the plaintiff.  *Id*. at *8.  Similarly, in *Omotoye v. TD Bank, N.A.*, Case No. 22-cv-3861 (CRC), 2024 WL 1071047, at *1, *5 (D.D.C. Mar. 12, 2024) (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979)), the court granted a motion to dismiss a claim against an alleged joint employer where the complaint contained no allegations that the defendant "controlled the 'means and manner' by which [the plaintiff] completed his tasks, . . . had the ability to levy penalties or alter his conditions of employment, . . . controlled [his] compensation, paid social security or employment taxes, or awarded him retirement benefits."

Here, Plaintiffs plead no facts supporting any of these factors.  They do not, for example, plead any facts showing that Danaher would have "controlled the terms and conditions of [Plaintiffs'] employment" had they been hired.  *See Doe*, 2020 WL 759177, at *8.  There are also no allegations that Danaher had the power to "hire, fire, [or] assign" Plaintiffs, or that it could

10

"direct and control" their "day-to-day work responsibilities." *See Mohamed*, 2022 WL 3211806, at *3. To the contrary, Plaintiffs (at least those who choose to specify) explicitly allege that other Defendants—not Danaher—made the decision not to hire them. (*See* Complt., ¶¶ 44 (alleging that Warren's "employment application was rejected by Beckman Coulter"), 50 (alleging that Cote's "employment application was rejected by Integrated DNA Technologies, Inc.").)

Plaintiffs also allege that "Danaher's level of policy-making and financial control creates an integrated enterprise between Danaher and its" operating companies. (*Id.*, ¶ 30.) The law does not treat related corporations as a single entity without consideration of multiple factors, such as: (1) the interrelation of operations; (2) whether there is common management; (3) whether there is centralized control of labor relations; and (4) whether there is common ownership and financial control of the various entities. *See Allen v. McEntee*, Nos. 93-7076, 93-7077, 1994 WL 709294, at *1 (D.C. Cir. Dec. 8, 1994); *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 979-80, 982 (4th Cir. 1987) (rejecting claim that parent was employer of subsidiary's employees; "when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer"). Plaintiffs' conclusory allegations about what they call an "integrated enterprise" do not plausibly show that the Court should treat Danaher and all operating companies as a single entity. *See Anderson v. Johns Hopkins Bayview Med. Ctr., Inc.*, Civil No. 16-cv-01567-JFM, 2017 WL 220136, at *9 (D. Md. Jan. 18, 2017) (granting motion to dismiss because plaintiff failed to plead facts sufficient to demonstrate four factors courts consider when determining whether businesses are engaged in integrated enterprise); *Purnell v. Verizon Md. Inc.*, Civil Action No. 8:10-CV-03184-AW, 2011 WL 2600683, at *1, *3 (D. Md. June 28, 2011) (granting motion to dismiss and ruling that plaintiff's

11

allegation that defendant was responsible for creation and implementation of policies impacting plaintiff's employment was not enough to state claim when plaintiff did not provide facts bearing upon four factors courts consider in determining if integrated enterprise exists); *Taylor v. Delmarva Power & Light Co.*, Civil Action No. 1:10-CV-01796 RDB, 2011 WL 826356, at \*1, \*2, \*4 (D. Md. Mar. 7, 2011) (granting motion to dismiss because plaintiff did not plead facts sufficient to establish that parent exercised "complete domination" over subsidiary, such as of fund or asset commingling, undercapitalization, or exercising daily, supervisory control; allegations that work force operated out of both defendants' locations, human resources employee represented herself as employee of both defendants, and parent's exercise of "exclusive control" over subsidiary's workers were insufficient to "flout limited liability's presumption of distinct corporate identities").

## III. THE CLAIMS AGAINST BECKMAN COULTER, INTEGRATED DNA TECHNOLOGIES, PALL, CYTIVA, AND ABCAM MUST BE DISMISSED BECAUSE THE COURT HAS NEITHER GENERAL NOR SPECIFIC PERSONAL JURISDICTION OVER THESE ENTITIES.

To establish personal jurisdiction, Plaintiffs "must allege specific acts connecting [each] [D]efendant with the forum." *See Dumitrescu v. DynCorp Int'l, LLC*, 257 F. Supp. 3d 13, 17 (D.D.C. 2017). Conclusory allegations are not enough. *See id*.

There are two types of personal jurisdiction, general and specific. Consistent with the Due Process Clause, a court can exercise general jurisdiction over a corporation only where the corporation is "at home," *i.e.*, its "place of incorporation and its principal place of business." *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 412-13 (2017).[6] Beckman Coulter is a Delaware

---

[6] In an "exceptional case," a corporation's contacts "in another forum 'may be so substantial'" that the corporation is also "at home in that State." *See id*. (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)). Here, the Complaint identifies no such contacts between the District of Columbia and Beckman Coulter, Integrated DNA Technologies, Pall, Cytiva, or Abcam.

company headquartered in California.  (*See* Declaration of Edgar Quinones-Ramos ¶ 3.) Integrated DNA Technologies is a Delaware company headquartered in Iowa.  (*See* Declaration of Sarah Smith ¶ 3.)  Pall is a New York company headquartered in New York.  (*See* Declaration of Sasha Murphy ¶ 3.)  Cytiva is a Delaware company headquartered in Massachusetts.  (*See* Declaration of Latrecia Hicks ¶ 3.)  Abcam is a Massachusetts company headquartered in Massachusetts.  (*See* Declaration of Sarah Smith ¶ 3.)  Thus, Plaintiffs cannot establish general jurisdiction over these Defendants.

Specific jurisdiction exists if (1) the defendant "transacts any business in the District [of Columbia]; contracts to supply services in the District; causes tortious injury in the District; or has an interest in, uses, or possesses real property in the District," and (2) the plaintiff's claims "'aris[e] from acts enumerated in' the District's long-arm statute or that the exercise of jurisdiction would satisfy due process." *Canuto v. Mattis*, 273 F. Supp. 3d 127, 140 (D.D.C. 2017) (quoting *Cap. Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 75 (D.D.C. 2003)). Thus, Plaintiffs must plead non-conclusory facts that identify Defendants' actions within Washington, D.C. from which Plaintiffs' claims arise.  *See Lewis v. Mutond*, 62 F.4th 587, 594 (D.C. Cir. 2023) (holding that "conclusory allegation" merely stating theory of specific jurisdiction "is not enough to transform the theory into a grant of personal jurisdiction").

Here, Plaintiffs do not allege any contacts between Beckman Coulter, Integrated DNA Technologies, Pall, Cytiva, or Abcam with the District of Columbia.  Not one of the Complaint's 134 paragraphs identifies a single specific action taken by these Defendants within Washington D.C., nor does the Complaint allege any specific impact in Washington D.C. or on any D.C. resident.  Indeed, even Plaintiffs' conclusory allegations of personal jurisdiction on their face read like a Freudian slip conceding that the Court can only exercise personal jurisdiction over

one Defendant—Danaher.  (*See* Complt., ¶ 10 ("This Court has personal jurisdiction over *Defendant* because *it* transacts business in, directs recruiting and hiring activities into, and caused injury within this District.") (emphasis added); *see also id*., ¶ 11 (alleging that "Danaher is subject to this Court's personal jurisdiction").)  Thus, Plaintiffs cannot establish specific jurisdiction over Beckman Coulter, Integrated DNA Technologies, Pall, Cytiva, and Abcam.  *See Canuto*, 273 F. Supp. 3d at 130, 140 (granting motion to dismiss for lack of personal jurisdiction where plaintiff had "not alleged that [defendant] has had *any* contacts with the District of Columbia . . . let alone any connection that constitutes the conduct listed in" DC long-arm statute).

## IV.    PLAINTIFFS COTE AND BUNENKO HAVE NOT EXHAUSTED THEIR STATE LAW CLAIMS.

As to their claims under the FCRA and FEHA, respectively, Cote and Bunenko face an exhaustion bar.  To pursue these state law claims, Cote and Bunenko must exhaust their administrative remedies.  *See McCullough v. Nesco Res. LLC*, 760 F. App'x 642, 646 (11th Cir. 2019) ("Before a plaintiff may bring an FCRA civil action, he must exhaust his administrative remedies, as set forth in Fla. Stat. § 760.11."); *Harris v. Thomas*, Case No. 15-cv-02510-JCS, 2015 WL 7015412, at *4 (N.D. Cal. Nov. 12, 2015) (quoting *Rojo v. Kliger*, 52 Cal. 3d 65, 83, 84 (1990) (emphasis omitted)) ("California law similarly requires that 'the FEHA administrative process must be pursued with respect to the specific rights and remedies enumerated in the act,' and constitutes 'a precondition to bringing a civil suit on a statutory cause of action.'").

Cote and Bunenko allege that they "dual-filed" charges with the EEOC and the respective state agencies, and both of them have received notice of their right to sue from the EEOC.  (*See* Complt., ¶¶ 13, 14; Exhibits O-S & W.)  However, that does not exhaust either of their state law claims.  *See Brookshire v. GMR Mktg. LLC*, CASE NO. 22-CV-80756-RUIZ/MAYNARD, 2022

14

WL 4124302, at *8 (S.D. Fla. Aug. 17) (setting aside "'dual-filing' allegation" with respect to FCRA claim), *report and recommendation adopted*, 2022 WL 4119729, at *1 (S.D. Fla. Sept. 9, 2022) (granting motion to dismiss); *Huenefeld v. Nat'l Beverage Corp.*, Civil Action No. 16-62881, 2017 WL 4838786, at *4, *7 (S.D. Fla. Oct. 24, 2017) (granting motion to dismiss because "the Amended Complaint does not include any allegations concerning [plaintiff's] compliance with the FCRA's exhaustion requirement" and noting that EEOC right-to-sue notice "cannot operate to circumvent the administrative prerequisites of the FCRA"); *Harris*, 2015 WL 7015412, at *4 ("An EEOC right-to-sue letter does not satisfy the jurisdictional requirement of exhaustion of administrative remedies as to FEHA actions."); *see also Prejean v. Lynwood Unified Sch. Dist.*, Case No. CV 07-05053 DDP (CTx), 2008 WL 11340320, at *1 (C.D. Cal. Apr. 7, 2008) (noting "that a right-to-sue letter from the EEOC satisfied the exhaustion of remedies requirement only for purposes of an action based on federal law, not for a state law action under the FEHA").  Bunenko fails to meet this prerequisite because he does not allege whether he received his notice of right to sue from the California Civil Rights Department as he must to exhaust his FEHA claim.  *See Harris*, 2015 WL 7015412, at *4 (dismissing FEHA claims because there was no indication that plaintiff received right-to-sue letter from California department); *Prejean*, 2008 WL 11340320, at *1 (granting motion to dismiss FEHA claims "for failure to exhaust administrative remedies by obtaining a right-to-sue letter from the California Department," notwithstanding plaintiff's contention "that he has exhausted his administrative remedies for purposes of the FEHA").  Likewise, Cote fails to meet this prerequisite because she does not allege how she exhausted her FCRA claims.  *See Brookshire*, 2022 WL 4124302, *8 (finding that complaint lacked allegations "regarding Plaintiff's satisfaction of the separate exhaustion requirements for FCRA claims under Florida Statute § 760.11"); *Wester v. Datex,*

15

*Inc.*, Case No. 8:20-cv-1785-T-33SPF, 2020 WL 6203530, at *3, *4 (M.D. Fla. Oct. 22, 2020) (granting motion to dismiss because "[n]o allegations have been made regarding how [plaintiff] has satisfied the separate exhaustion requirements for FCRA claims under Florida Statute § 760.11").  Since the Complaint fails to include factual allegations to support that Cote and Bunenko exhausted their state law administrative remedies, their state law claims must be dismissed.

## V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR AGE DISCRIMINATION.[7]

### A.   Plaintiffs Fail To State A Claim Under A Disparate Treatment Theory.

Plaintiffs fail to plead plausible age discrimination claims based on a disparate treatment theory.  To allege disparate treatment under the ADEA, a plaintiff must

> plead[] facts from which it can reasonably be inferred that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class).

*See Dismukes v. U.S. Dep't of Veterans Affs.*, Civil Action No. 23-cv-02259 (ACR), 2025 WL 343190, at *1, *6 (D.D.C. Jan. 30, 2025) (granting motion to dismiss ADEA failure to hire claim).  This means that Plaintiffs must allege non-conclusory facts supporting a "casual connection" between their age and a decision not to hire them.  *See id.* at *6; *Webster v. Burgum*, Civil Action No. 23-3050 (RC), 2025 WL 1279355, at *5-6 (D.D.C. May 2, 2025) (granting motion to dismiss ADEA failure to hire claim).

---

[7] Claims under the LEDL, FCRA, FEHA, and NYSHRL are analyzed under the same framework as ADEA claims.  *See Story v. Our Lady of the Lake Physician Grp.*, 779 F. App'x 266, 267 n.2 (5th Cir. 2019); *Kamnerdpila v. City of St. Petersburg*, Case No. 8:23-cv-2724-VMC-NHA, 2024 WL 3345255, at *4 n.3 (M.D. Fla. July 9, 2024); *Strifling v. Twitter Inc.*, Case No. 22-cv-07739-JST, 2023 WL 12171694, at *7 n.8 (N.D. Cal. May 8, 2023); *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 131 n.12 (W.D.N.Y. 2010).

Allegations by each Plaintiff suffer from the same fatal flaw: they are utterly devoid of factual content that might support a discriminatory inference. Plaintiffs have no facts but simply offer on "information and belief" that "substantially younger" individuals who were either "less qualified" or "not more qualified" than Plaintiffs were interviewed or hired instead of them. (*See* Complt., ¶¶ 44, 46, 50, 55, 60.) But these allegations are no more than guesses, which are not entitled to an assumption of truth and do not support a causal connection. *See Iqbal*, 556 U.S. at 678; *Webster*, 2025 WL 1279355, at *6 (quoting *Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158, 194 (D.D.C. 2012)) (ruling that plaintiff's "belief" that "'those referred to the hiring manager and the final Selectee were much younger (less than 40 years of age) and with significantly less experience' than himself" was "unsupported by any additional facts, making it a 'bare allegation[ ]' insufficient to establish a causal connection between Plaintiff's age and non-selection").

Indeed, Plaintiffs do not even "identif[y] [a] specific individual" who was interviewed or hired, nor do they "suppl[y] any actual ages of other candidates or the final selectee." *See Webster*, 2025 WL 1279355, at *6; *see also Arnold v. Speer*, 251 F. Supp. 3d 269, 271, 273 (D.D.C. 2017) (dismissing ADEA claim and ruling that "Plaintiff must allege more specific facts that lay out what happened, who was involved (including, *e.g.*, the age of the person who was actually promoted), and how such conduct constitutes age discrimination"). And, "without more," Plaintiffs' "unfurnished insistence of [their] superior qualifications" do not plead a claim. *See Dismukes*, 2025 WL 343190, at *6 (ruling that plaintiff's "simpl[e] assert[ion] that he was more qualified" was "insufficient"); *Montgomery v. Mayorkas*, Civil Action No. 23-3931 (BAH), Civil Action No. 24-1697 (BAH), 2024 WL 4973406, at *1, *8 (D.D.C. Dec. 4, 2024) (granting motion to dismiss ADEA failure to hire claim because plaintiff's allegation that "'[i]n

17

each instance,' the person selected to fill the roles 'was less qualified than' plaintiff and 'was not part of the Plaintiff's protected class'" was "insufficient to state a claim," including as plaintiff did not allege "why the selectees were less qualified than him"); *see also Khadem v. Broad. Bd. of Governors*, Civil Action No. 18-1327 (RDM), 2020 WL 6381905, at *7, *9, *11 (D.D.C. Oct. 29, 2020) (granting motion to dismiss ADEA claim premised on insufficient allegation that management failed to promote plaintiff while "less deserving but younger colleagues were promoted"); *Amis v. Mayorkas*, No. 21-1544, 2022 WL 1090252, at *1 (4th Cir. Apr. 12, 2022) (affirming order dismissing ADEA claim because plaintiff's allegation "that he was more qualified than the person who received the promotion . . . was a conclusory allegation [court] need not accept").

Likewise, just as Plaintiffs have not provided "any information regarding the characteristics of the selected applicant (or any other comparator)," Plaintiffs have not alleged sufficient information "as to whether [Plaintiffs] and that applicant (or any other comparator) were similarly situated." *See Dismukes*, 2025 WL 343190, at *6; *see also Jones v. Dist. of Columbia Off. of Unified Commc'ns*, Civil Action No.: 25-1129 (RC), 2025 WL 2977585, at *1, *4 (D.D.C. Oct. 22, 2025) (granting motion to dismiss ADEA claim because, "even assuming Plaintiff's proposed comparators were 'significantly younger,' she alleges no facts at all about the candidate who was offered the . . . position, which would preclude the Court from inferring that this candidate was similarly situated to Plaintiff"); *Watkins v. Dep't of Just.*, Civil Action No. 23-766 (RDM), 2024 WL 4362156, at *1, *5, *11 (D.D.C. Sept. 30, 2024) (granting motion to dismiss ADEA claim because plaintiff had not "pointed the Court to a similarly situated,

18

younger employee who was allowed to apply for the promotion" or alleged that such employee was "nearly identical" in "all of the relevant aspects").[8]

Further, Plaintiffs' uniform assertions "[u]pon information and belief" are insufficient to plead a plausible claim of discrimination. A plaintiff's reliance on "information and belief cannot transform legal conclusions into plausible factual allegations." *Atkins Nuclear Secured, LLC v. Aptim Fed. Servs., LLC*, Civil Action No. 1:18-cv-1112 (AJT/JFA), 2019 WL 1793137, at *6 (E.D. Va. Apr. 24, 2019). Rather, "[i]t is well-settled that such 'conclusory allegations supported by information and belief are insufficient to survive a motion to dismiss.'" *See Doe*, 2020 WL 759177, at *6 (quoting *Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 31 (D.D.C. 2001)); *see also Webster*, 2025 WL 1279355, at *6 (rejecting allegations based on plaintiff's "belief"); *Est. of Mickens v. U.S. Bank Nat'l Ass'n*, No. 18-cv-928 (KBJ), 2021 WL 3418955, at *5 (D.D.C. Aug. 5, 2021) (ruling that complaint failed to "satisfy Rule 8's pleading standards," including because plaintiffs "merely allege[d] [certain facts] '[u]pon information and belief'" and "provide[d] no additional information . . . as necessary to give rise to a plausible [ ] claim"); *PeaceTech Lab, Inc. v. C5 Accelerate LLC*, Civil Action No. 20-922 (JDB), 2021 WL 106718, at *8 (D.D.C. Jan. 12, 2021) (ruling that "information and belief" allegation "is conclusory" if there is "no factual support for [plaintiff's] claim"); *Mekuria v. Bank of Am.*, 883 F. Supp. 2d 10, 15-16 (D.D.C. 2011) (dismissing discrimination claim in part based on allegation "[u]pon information and belief" that contained "nothing more than legal conclusions devoid of any factual support"). Here, Plaintiffs state no facts upon which their "information and belief" allegations rest that substantially younger candidates who were not more qualified than they

---

[8] Indeed, Plaintiffs do not even allege the phrase "similarly situated" in reference to those who received interviews or were hired.

were selected for the positions.  Thus, Plaintiffs do not plausibly allege that substantially younger candidates who were not more qualified than they were selected for the positions.

Even if Plaintiffs did, somehow, sufficiently plead that they were "more qualified," that would not be enough to state a claim.  *See Amis*, 2022 WL 1090252, at *1 ("Based on [plaintiff's] theory, any of [the individuals who applied for the position and did not receive an interview] could state a claim for discrimination simply by alleging that they were more qualified.").  *Fundamentally*, Plaintiffs "fail[] to allege sufficient facts to create an inference that [their] non-selection was because of age discrimination." *See Webster*, 2025 WL 1279355, at *6 (quoting *Twombly*, 550 U.S. at 555) (ruling that "facts alleged in the Amended Complaint fail to raise a claim 'above the speculative level' as required to survive a motion to dismiss"); *see also Jones*, 2025 WL 2977585, at *5 (ruling that plaintiff's allegations failed to "raise a reasonable inference of age discrimination" because "her complaint [was] entirely devoid of factual allegations tying [defendant's] actions to her age"); *Arnold*, 251 F. Supp. at 273 (ruling there were not sufficient allegations demonstrating that failure to promote "stemmed from discrimination on the basis of <u>age</u>" even if "Court could potentially agree that [plaintiff] was treated unfairly"); *Gladden v. Solis*, 926 F. Supp. 2d 147, 150-52 (D.D.C. 2013) (quoting *Iqbal*, 556 U.S. at 679) (granting motion to dismiss ADEA failure to hire claim because it was "a classic example of a case where 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct'").

Plaintiffs' "conclusory allegations and unadorned speculation about [Defendants' alleged] hiring practices will not give rise to a conceivable, let alone plausible, inference that [their] non-selection was based on their [ ] [age]." *See Dismukes*, 2025 WL 343190, at *7 (ruling that plaintiff presented "only legal conclusions couched as factual allegations in alleging that

20

[defendant's] personnel decisions were borne from discrimination"); *see also Khadem*, 2020 WL 6381905, at *9 (quoting *Iqbal*, 556 U.S. at 678) (ruling that "Rules 8 and 12(b)(6) demand more" when court could "only guess how Plaintiff contends she was wronged, and cannot 'draw the reasonable inference' from Plaintiff's allegations 'that the defendant is liable for the misconduct alleged'"); *Jianqing Wu v. Special Couns., Inc.*, 54 F. Supp. 3d 48, 49 (D.D.C. 2014) (granting motion to dismiss ADEA failure to hire claim), *aff'd*, No. 14-7159, 2015 WL 10761295 (D.C. Cir. Dec. 22, 2015); *Saas v. Major, Lindsey & Africa, LLC*, Civil No.: 1:23-cv-02102-JRR, 2024 WL 2113654, at *5, *7 (D. Md. May 10, 2024) (granting motion to dismiss ADEA claim because plaintiff's claim based on defendants' alleged usage of "artificial intelligence tools" was "entirely speculative"), *aff'd*, No. 24-1527, 2024 WL 4850774 (4th Cir. Nov. 21, 2024). Plaintiffs failed to include any factual allegations regarding Defendants' "recruiting and hiring practices," much less any factual allegations connecting these alleged practices to their alleged adverse employment actions. Indeed, notwithstanding their speculation about these supposed "practices," Plaintiffs do not even allege that Defendants had knowledge of *Plaintiffs' own ages* in particular, or how exactly Defendants knew each Plaintiff's age. (*See* Complt., ¶¶ 41-60); *see also Nedremizara v. Towers Watson*, Civil No. 12-1358 (RCL), 2013 WL 4498977, at *1 (D.D.C. Aug. 21, 2013) (granting motion to dismiss because plaintiff's amended complaint failed to allege facts sufficient to establish his claim that defendant "discriminated against him on the basis of . . . age by failing to hire him," including "no facts to suggest that [defendant] knew his age . . . when rejecting his application"); *Amis*, 2022 WL 1090252, at *1 (holding that "there is no basis to conclude that the interview panel was aware of [plaintiff's] [ ] age . . . when they

21

selected candidates to interview" because plaintiff "did not allege in his complaint that he disclosed his age . . . on his employment application").[9]

In sum, Plaintiffs ask the Court to assume, as they do, that they were not hired based on their age. Plaintiffs fail to allege facts that would plausibly support an inference that any decision not to hire them was due to their age. As such, Plaintiffs fail to sufficiently plead their individual age discrimination claims under a disparate treatment theory.

## B.    Plaintiffs Fail To Plead A Claim Under A Disparate Impact Theory.

Plaintiffs' Complaint may or may not assert a disparate impact theory of discrimination—Defendants asked Plaintiffs' counsel to confirm one way or the other, but they refused. To the extent Plaintiffs do intend such a claim, it must be dismissed. Disparate impact claims challenge practices that have a "disproportionately adverse effect" on a protected group "and are otherwise unjustified by a legitimate rationale." *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524-25 (2015). Disparate impact claims require "that a facially neutral employment policy or practice has a significant disparate impact on a protected class" of which the plaintiff is a member and that the plaintiff "must, at a minimum, allege some statistical disparity." *Jianqing Wu*, 54 F. Supp. 3d at 54. A plaintiff seeking to establish a disparate impact claim is also "responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005).

---

[9] To be clear, even if Plaintiffs had alleged that any decisionmakers may have known Plaintiffs' own ages when they made the employment decisions at issue, it would not be enough to state a claim. *See, e.g., Dismukes*, 2025 WL 343190, at *6 (ruling that plaintiff's argument that defendants "knew of his protected statuses because he noted those statuses on a questionnaire submitted with his application" did not bolster claim "because—other than implying the possibility that the [defendant] saw his . . . age] before making the hiring decision—it provides no further factual basis for the inference that [he] was not selected *because* of his . . . age]").

22

As a threshold issue, Plaintiffs may not pursue a disparate impact claim under the ADEA because they were only applicants for employment, not employees. Under the ADEA's plain statutory language, a plaintiff may pursue a disparate impact claim only under § 4(a)(2), and that section does not cover applicants—only employees. More specifically, § 4(a) of the ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer --

> (1) *to fail or refuse to hire* or to discharge *any individual* or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or]

> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

29 U.S.C. § 623(a)(1), (2) (emphasis added). Only the latter provision, § 4(a)(2) of the ADEA, provides a cause of action for disparate impact discrimination. Thus, to the extent Plaintiffs seek to pursue a disparate impact failure-to-hire claim, such a claim must be dismissed because all were unsuccessful applicants, not employees.

The Supreme Court reached the same conclusion in *Smith*. *Smith* holds that, because of an incongruity between the language of § 4(a)(1) and § 4(a)(2) vis-à-vis the employer's actions, only § 4(a)(2) allows for disparate impact liability. *See Smith*, 544 U.S. at 236 n.6. In particular, the language of § 4(a)(1) focuses on the employer's actions with respect to the targeted individual; therefore, it requires a showing of intent to discriminate and "does not encompass disparate-impact liability." *See id*. On the other hand, § 4(a)(2) contains "key textual differences," in particular that the language of § 4(a)(2) focuses on the effects of challenged actions on the employee, rather than the motivation for the actions of the employer, and, therefore, prohibits practices that have an unintended disparate impact on older workers. *See id*. The ADEA, therefore, only provides for disparate impact claims under § 4(a)(2). *See id*.; *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 968 (11th Cir. 2016).

23

Section 4(a)(2) of the ADEA, the only section that allows for disparate impact liability, covers only "employees," not job applicants. *See Smith*, 544 U.S. at 266 (O'Connor, J., concurring) ("Section 4(a)(2) of course, does not apply to 'applicants for employment' at all—it is only § 4(a)(1) that protects this group."). The ADEA, accordingly, does not provide a disparate impact cause of action for hiring claims. *See Pearce v. Frontier Airlines*, Civ. No.: MJM-22-2635, 2024 WL 2881329, at *2 n.1 (D. Md. June 7, 2024) ("Disparate impact claims are available under 29 U.S.C. § 623(a)(2), but only to employees, not to outside job applicants."); *see also Kleber v. CareFusion Corp.*, 914 F.3d 480, 481-82 (7th Cir. 2019) (affirming order granting motion to dismiss and "hold[ing] that the plain language of § 4(a)(2) makes clear that Congress, while protecting employees from disparate impact age discrimination, did not extend that same protection to outside job applicants"); *Villarreal*, 839 F.3d at 963 ("We conclude that [plaintiff] failed to state a claim of disparate impact. The plain text of section 4(a)(2) covers discrimination against employees. It does not cover applicants for employment.").

In addition, Plaintiffs fail to identify *any* specific neutral employment practice that may have caused *any* statistically significant discriminatory impact on applicants who are 40+. Indeed, there is nothing "neutral" about Plaintiffs' allegations. Rather, Plaintiffs allege intentional (*i.e.*, disparate treatment) discrimination throughout their Complaint. In their introduction, Plaintiffs allege that "Danaher *prefers* not to hire, and *actively eliminates* from consideration for hire, older individuals for its sales, professional, and management positions based on age." (Complt., ¶ 4 (emphasis added).) Plaintiffs continue that "Danaher's discriminatory culture and practices . . . systematically favor[] younger applicants at the expense of their older counterparts, . . . Danaher maintains hiring policies and practices which *intentionally* give preference to younger applicants solely based on their age," and "[a]s a result

24

of this bias, qualified older applicants have been routinely and systematically excluded from job opportunities." (*Id.*, ¶¶ 5-7 (emphasis added).)  Plaintiffs allege that Defendants "used [certain] information to infer and screen out older applicants." (*Id.*, ¶ 39.)  Plaintiffs also allege that "Danaher has *intentionally, willfully,* and repeatedly engaged in a pattern, practice, and/or policy of violating the ADEA," including "*willfully* utilizing a biased recruiting system[,] . . . *willfully* implementing a discriminatory AI driven application process," and "*willfully* refusing to consider, interview or hire" applicants who were 40 and over. (*Id.*, ¶ 64 (emphasis added).)  Indeed, each of Plaintiffs' claims for relief are labeled in bold and underlined font as claims for "**<u>Intentional Discrimination</u>**" or "**<u>Intentional Age Discrimination</u>**" and expressly allege "disparate treatment" with no mention of disparate impact. (*Id.*, ¶¶ 100-30.)  Plaintiffs' failure to allege a facially neutral practice is fatal to any disparate impact claim they purport to assert. *See Townsend v. U.S.*, 236 F. Supp. 3d 280, 308-09, 326 (D.D.C. 2017) (granting motion to dismiss disparate impact claim because "plaintiff repeatedly asserts that the office reorganization was intentionally discriminatory against older employees"); *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 182-83 (D.D.C. 2016) (granting motion to dismiss disparate impact claims because plaintiff's "contention is not that a facially non-discriminatory practice or process has led to a statistically significant disparate impact but rather that the [defendant's] management intentionally discriminated against him and other older employees," which "is not a disparate impact claim").  Worse, Plaintiffs identify no *specific* employment policy or practice at all; their claims are merely comprised of conclusory allegations. *See Mills v. Hayden*, Civil Action No. 04-2205 (RBW), 2024 WL 4697733, at *16-17 (D.D.C. Nov. 6, 2024) (ruling that plaintiffs failed to state disparate impact claims when plaintiffs merely pointed "to a generalized policy that leads to such an impact" and failed to "plead sufficient factual information about [specific]

practices"); *Saas*, 2024 WL 2113654, at *5 (ruling that "Plaintiff has not identified a particular employment practice that exists" such that her "allegations are simply insufficient to state a plausible" disparate impact claim).

Nor have Plaintiffs alleged the existence of any statistical disparity.  Plaintiffs offer nothing besides labels and conclusions to support their specious claim that Defendants' policies and practices had a disproportionate effect on applicants ages 40 and over.  Courts have deemed complaints subject to dismissal for failure to plead a statistical disparity that disadvantaged the plaintiff.  *Mills*, 2024 WL 4697733, at *16-17 (quoting *Jianqing Wu*, 54 F. Supp. 3d at 54) (ruling that "plaintiffs have failed to show that a 'facially neutral employment policy or practice has a significant disparate impact on a protected class'" because their allegation that '[m]inority employees are promoted at a <u>significantly lower rate</u> than Caucasian employees[,]' id. (emphasis added)" was a "conclusory assertion[] without any supporting facts [and] not sufficient to 'allege some statistical disparity'"); *Townsend*, 236 F. Supp. 3d at 308 ("Even assuming, however, that the office reorganization policy was 'facially neutral,' the plaintiff's claim still fails because he offers no statistical or other evidence to support his claim that the policy had a disparate impact on older employees."); *cf. Chudson v. Watt*, 125 F. Supp. 3d 255, 273-74 (D.D.C. 2015) (dismissing claim "to the extent Plaintiff attempts to rely on a disparate impact theory . . . for failure to state a claim" because complaint did not "give any details about the number of older veterans hired by the office, nor does it identify any hiring disparities"); *Saas*, 2024 WL 2113654, at *5 ("Finally, as a separate matter, Plaintiff makes no meaningful allegation that the so-called 'tools' have a disparate impact on applicants based on age.").

Indeed, Plaintiffs' Complaint contains no allegations concerning the number of applicants under 40 and/or 40 and over; no allegations concerning the number of applicants under 40 and/or

26

40 and over who were "qualified" for the positions they applied for; no allegations concerning the number of such applicants under 40 and/or 40 and over who were hired; and no allegations concerning a causal link between applicants' ages and any statistically significant imbalance among those of different ages in the hiring of employees.  Plaintiffs' barebones assertion that "Defendants' policies and practices thus had both the purpose and effect of disproportionately excluding applicants ages 40 and over" is not enough to meet their burden to plead a plausible disparate impact claim.  (Complt., ¶ 40); *see Jianqing Wu*, 54 F. Supp. 3d at 56 ("Without pointing to some 'elementary' evidence that the policy in question had a disparate impact on people over 40, [plaintiff] may not equate the rejection of candidates who have completed more than ten document-review projects with a policy that results in the systematic exclusion of older candidates.").  In other words, the "Court cannot create something out of nothing." *Jianqing Wu*, 54 F. Supp. 3d at 56.

Finally, Plaintiffs' lawyer-aided EEOC Charges do not allege disparate impact.  Rather, Plaintiffs allege in lockstep in their Charges that they "were subjected to discrimination based on . . . age" and "not hired due to Respondent's discriminatory animus."  (*See* Exhibits F, G, J-N, T & V, p. 1.)  By stating that they were "subjected to" discrimination "based on" age and "due to Respondent's discriminatory animus," Plaintiffs allege a pure disparate treatment claim.  This precludes them from bringing a disparate impact claim in this action for failure to exhaust administrative remedies.  *See, e.g., Hopkins v. Whipple*, 630 F. Supp. 2d 33, 41-42 (D.D.C. 2009) (granting motion to dismiss because plaintiff "did not pursue his administrative remedies with respect to his disparate impact claim" since his "administrative complaint of discrimination did not raise a disparate impact claim").

To bring a disparate impact claim in litigation, a plaintiff's EEOC charge must identify a specific neutral employment policy that has a disparate impact on the protected group. *See, e.g., id.* at 41 (quoting *Park v. Howard Univ.*, 71 F.3d 904, 908-09 (D.C. Cir. 1995) ("Specificity in a charge is not a 'mere technicality' and compliance with all administrative procedures and deadlines is mandatory."). Here, Plaintiffs' Charges do not identify any specific neutral policy that had an adverse effect on them because of their age. Nor do they make any mention whatsoever of any policies. To the contrary, Plaintiffs' allegations focus on what they were "*subjected to*" and specifically reference "*discriminatory animus*." (*See* Exhibits F, G, J-N, T & V, p. 1 (emphasis added).)

These allegations are wholly insufficient to preserve the right to bring a disparate impact claim because they only reiterate Plaintiffs' claims of disparate treatment. For instance, in *Bartlette*, 208 F. Supp. 3d at 324, the court granted the defendant's motion to dismiss the plaintiff's disparate impact claims for failure to exhaust administrative remedies. The plaintiff's charge in *Bartlette* alleged: "I believe that I have been discriminated against based upon my age, 55, in violation of the [ADEA]." *Id*. The court ruled that the charge simply amounted to an allegation that the defendant treated the plaintiff worse than others because of his age and that his failure to identify a facially neutral policy that disproportionately impacted employees based on protected status warranted dismissal. *See id*.

This case is even more compelling. Plaintiffs' Charges allege intentional discriminatory conduct to which they allegedly were subjected and offer no neutral employment policy that allegedly had the unintended consequence of creating a disparate impact based on age. For this

28

reason, too, Plaintiffs' disparate impact claims (to the extent Plaintiffs purport to assert them) cannot proceed.[10]

## VI.   PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD AN ADEA COLLECTIVE ACTION.

Plaintiffs have failed to plead facts supporting any plausible ADEA collective action. Unlike Plaintiffs' state law class claims, which are governed by Fed. R. Civ. P. 23, ADEA collective actions are brought under Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). To proceed with a collective action, Plaintiffs must be "similarly situated" to the members of the proposed collective. *See Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *3 (W.D.N.C. Sept. 16, 2011). Although the Complaint purports to bring an ADEA collective action under 29 U.S.C. § 216(b), it simply relies on boilerplate collective action terminology. Plaintiffs allege they are "similarly situated" to every "individual[] age forty (40) or older who applied for any of the Covered Positions with Danaher or its OpCos in the United States, were not hired, and were notified or otherwise learned that they were not hired at any time during the applicable statute of limitations," yet they do not plead a single fact supporting that legal conclusion. (Complt., ¶¶ 61-62); *see Pickering v. Lorillard Tobacco Co., Inc.*, No. 2:10-CV-633-WKW[WO], 2011 WL 111730, at *2 (M.D. Ala. Jan. 13, 2011) ("Plaintiff merely seeks relief on behalf of 'all similarly situated employees.' This phrase is a legal conclusion and, absent some factual elaboration, is insufficient to satisfy *Twombly's* and *Iqbal's* pleading bar.").

---

[10] Plaintiffs' failure to assert individual claims under either theory cascades to Plaintiffs' representative claims. If Plaintiffs have not properly pled their individual claims, they certainly cannot represent others with respect to those claims. *See, e.g., Brink v. XE Holding, LLC*, No. 1:23-cv-00325-MSN-LRV, 2024 WL 3952567, at *8 (E.D. Va. Aug. 26, 2024) ("Because the Court will dismiss Plaintiffs individual claims and Plaintiffs have not yet moved for class certification, the Court will also dismiss Plaintiffs' class claims."). Indeed, Plaintiffs' representative claims only serve to amplify the deficiencies that plague their individual claims.

Plaintiffs claim they are similarly situated to the potential members of the collective in that they have all sought and been denied these positions "due to policies and practices that have the purpose and effect of denying them employment opportunities because of their age." (Complt., ¶ 62.)  Plaintiffs' argument fails.  Plaintiffs have not alleged facts demonstrating that they are similar to each other, much less that the members of such a broad, nationwide putative collective action spanning multiple, independent entities were together "similarly situated" victims of a single, common decision, policy or plan by Defendants to not hire them due to their age.

Courts have ruled that ADEA collectives cannot proceed when the plaintiffs failed to "show that they and other putative collective action members were victims of a common policy or plan that violated the law."  *See, e.g., Horoschak v. Sirius XM Radio, Inc.*, 24-CV-8177 (JMF), 2025 WL 2083839, at *1 (S.D.N.Y. July 24, 2025).  For example, in *Wilhoit v. AstraZeneca Pharms. LP*, Civil Action No. 22-1634-GBW-SRF, 2024 WL 2843169, at *1, *8, *9 (D. Del. June 5, 2024), the court granted the defendant's motion to strike the plaintiffs' ADEA collective action allegations, as well as denied the plaintiffs' motion for conditional certification, when the plaintiffs' proposed collective covered "'all individuals that were employed by [the defendant] in its salesforce anytime between December 1, 2020, through the resolution of this action' and 'who suffered adverse employment action,'" including applying and being rejected for an open position, "while age 40 or older."  The court ruled that the "speculative nature of Plaintiffs' allegations about the existence of a company-wide plan or policy" to "lower the average age of its workforce" undercut "Plaintiffs' assertion that members of the proposed collective are similarly situated under any such policy."  *Id*. at *8; *Wilhoit v. AstraZeneca Pharms. LP*, Civil Action No. 22-1634-GBW-SRF, 2024 WL 706901, at *8 (D.

30

Del. Feb. 21, 2024), *report and recommendation adopted*, 2024 WL 2843169, at *1.  The court also ruled that "the breadth of the proposed collective runs counter to Plaintiffs' position that the members of the proposed collective are similarly situated," noting "[s]uch a broad collective would thus include applicants aged 40 or older who sought positions they were wholly unqualified to hold." *Wilhoit*, 2024 WL 2843169, at *8.  The court noted that "because Plaintiffs seek to certify a broad collective of nationwide employees or applicants, Plaintiffs must meet a 'heavier-than usual burden' of showing 'that Defendant's discriminatory policies infected all of its . . . hiring decisions, regardless of the circumstances of the . . . rejection.'"  *Id*.  The court ruled that "without a showing beyond Plaintiffs' belief that [the defendant] may have adopted a company-wide policy or plan to lower the age of its employees," the plaintiffs failed to meet this burden.  *Id*.; *see also Duffy v. Sodexho, Inc.*, Civil Action No. 05-5428, 2006 WL 3025958, at *1, *3 (E.D. Pa. Oct. 20, 2006) (denying plaintiffs' motion for provisional class certification in ADEA action because court was "unwilling to jump to the conclusion that the Defendant may have implemented an age-based discriminatory policy affecting the entire proposed class" based on "mere speculation").  So, too, is the case here.

Plaintiffs' collective claims essentially boil down to the following: Plaintiffs applied for work at different companies and to different positions and were not hired; Plaintiffs believe (without alleging specific facts) other people age 40+ were not hired; and so Plaintiffs speculate that the reason is that Defendants prefer hiring younger employees.  (*See* Complt., ¶¶ 4, 37-60.)  But Plaintiffs' hunch regarding potential age discrimination is not enough, especially when Plaintiffs seek to certify a broad nationwide collective.  Plaintiffs are required to bring factual allegations of a common policy affecting all collective members.  *See Wilhoit*, 2024 WL 2843169, at *8.  Plaintiffs fail to assert any facts to support their theory that there was a

31

"company-wide" age-based policy that discriminated against applicants over 40 (there was not), as well as their beliefs that Defendants used educational and work history information "to infer and screen out older applicants" and "weeded out older applicants" through "Workday and other AI applications" (they did not). (*See* Complt., ¶¶ 37, 39, 101); *see also Saas*, 2024 WL 2113654, at *5 (ruling that allegation "that Defendants use artificial intelligence tools" to discriminate based on age was "based solely on supposition").

Instead, Plaintiffs' counsel conceded in *Nadeau* and *Critelli* that hiring decisions are made by individual hiring managers. (*See* Exhibits A, ¶¶ 58-59, C, ¶¶ 78-79 & D, ¶¶ 60, 64-65 (further conceding that hiring managers "exercise[] their discretion" on "individualized" basis).) Although Plaintiffs sweep it under the rug here as they make another attempt to animate this fatally flawed claim, the Court should not ignore this fact. Courts have ruled that decentralized decision-making precludes a collective action, and rightly so. *See, e.g., Hughes v. NVR, Inc.*, Civil Action No. 1:21-cv-1018 (RDA/IDD), 2022 WL 4856197, at *6 (E.D. Va. Sept. 30, 2022) (ruling that conditional certification was inappropriate because "Plaintiffs' claims turn on their individual interactions with their supervisors"); *MacGregor v. Farmers Ins. Exch.*, Civil No. 2:10-CV-03088, 2011 WL 2981466, at *4 (D.S.C. July 22, 2011) (ruling that "collective treatment is imprudent" when "plaintiffs ask to conditionally certify a nationwide class" and suit would involve "inquiries into independent supervisor decisions" by "numerous different supervisors throughout the country"). Applicants not hired by different managers for different roles (sometimes at entirely different companies) are not similarly situated. *See Wilhoit*, 2024 WL 706901, at *8-9 (recommending that court grant defendant's motion to strike collective action allegations and deny plaintiffs' motion for conditional certification of ADEA collective action because plaintiffs' "proposed collective encompasses former employees who were

32

terminated for any reason" and "[t]hese termination decisions were made by different managers in different locations"). What Plaintiffs "believe" about why applicants were not hired cannot suffice—individualized inquiries would be necessary to make that determination. *See id.* at *8; *Duffy*, 2006 WL 3025958, at *3 (rejecting argument "that the Defendant maintains a uniform hiring system subject to nation-wide procedures" based on "job posting database" as providing factual nexus binding "named plaintiffs and the potential class members together as victims of a particular alleged discrimination" when defendant claimed "that actual selection decisions are made by a local hiring manager," even when plaintiffs contended "that the decisions of the local hiring managers are nevertheless subject to the same guidelines and procedures nationwide").[11] Plaintiffs do not plead any facts bridging the gap between individual employment decisions and collective treatment.

Because Plaintiffs' wholly conclusory allegations are insufficient under *Twombly* and *Iqbal*, the ADEA collective action must be dismissed at this stage of the proceeding. To do otherwise would effectively condone Plaintiffs' "shoot first, aim later" pleading approach. *See Wilhoit*, 2024 WL 2843169, at *9; *Weise v. Blue Line Law Firm PLLC*, CASE NO.: 22-CV-81549-AMC, 2024 WL 363720, at *3 (S.D. Fla. Jan. 5) ("This Complaint does not plausibly allege a basis for a collective action. And, deciding this issue at the pleading stage is important because a party can only get discovery on well-pled allegations."), *report and recommendation accepted*, 2024 WL 361254, at *1 (S.D. Fla. Jan. 31, 2024) (granting motion to dismiss plaintiff's collective action claim).

---

[11] Indeed, members of the proposed collective do not even have to believe they were "qualified" for the positions they were not hired for to fall within the collective definition set forth in the Complaint. (*See* Complt., ¶ 61); *see also Wilhoit*, 2024 WL 2843169, at *8.

## VII.  PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD BASIC RULE 23 CLASS REQUIREMENTS.

Under Rule 23, district courts enjoy "broad discretion in determining whether to permit a case to proceed as a class action." *Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1, 10-11 (D.D.C. 2015) (striking plaintiff's class action claims from amended complaint in granting motion to dismiss).  Pursuant to that discretion, a court "may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  Indeed, this Court's local rules acknowledge that such orders are appropriate even at the pleading stage, specifically providing that defendants "may move *at any time* to strike the class action allegations or to dismiss the complaint."  LCvR 23.1(b) (emphasis added).  And "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 565 n.15 (E.D. Va. 2023) ("Although the Court does not have the benefit of the discovery, there are times that the issues are clear enough at the pleading-stage to determine that a case is not appropriate for class relief."); *Cornette v. Jenny Garton Ins. Agency, Inc.*, Civil Action No. 2:10-CV-60, 2010 WL 2196533, at *2 (N.D.W. Va. May 27, 2010) ("Where the inability to maintain the suit as a class action is apparent from the face of the complaint, a court may dismiss the class allegations on the pleadings.").  This is one of those times.

First, the time for Plaintiffs to file for class certification under Local Rule 23.1(b) has expired.  Local Rule 23.1(b) requires that:

> Within 90 days after the filing of a complaint in a case sought to be maintained as a class action, unless the Court in the exercise of its discretion has extended this period, the plaintiff shall move for a certification under Fed. R. Civ. P. 23(c)(1), that the case may be so maintained.

34

The D.C. Circuit Court strictly adheres to the 90-day deadline to file for class certification. *See, e.g., Harriott v. Wash. Metro. Area Transit Auth.*, Civil Action No. 19-1656 (TJK), 2019 WL 7066631, at *1 (D.D.C. Dec. 23, 2019) ("Local Rule 23.1(b) and its predecessors have been strictly applied in this Circuit."). As the D.C. Circuit Court has explained, adhering to the 90-day deadline is critical because "strict enforcement of [the rule] implements the policy of Rule 23(c)(1) of the Federal Rules of Civil Procedure, which states that the status of class actions should be determined quickly." *Black Panther Party v. Smith*, 661 F.2d 1243, 1279 (D.C. Cir. 1981), *vacated*, *Smith v. Black Panther Party*, 458 U.S. 1118, 1118 (1982) ("The judgment is vacated and the case is remanded to the United States Court of Appeals for the District of Columbia Circuit with directions that it instruct the United States District Court for the District of Columbia to dismiss the complaint with prejudice."); *see also McCarthy v. Kleindienst*, 741 F.2d 1406, 1407, 1411-12 (D.C. Cir. 1984) (affirming district court's refusal to certify case as class action). As the court observed in *Howard v. Gutierrez*, 503 F. Supp. 2d 392, 394 (D.D.C. 2007), after striking the plaintiffs' class claims as untimely under Local Rule 23.1(b), "application of the local rule leads to a dramatic but warranted result in this case, as has been true in a number of other cases in this Circuit." *See also Harriott*, 2019 WL 7066631, at *1 ("Serious consequences often flow from a fair application of time limits, and that is the case here.").

In *Black Panther Party*, the plaintiffs did not move for an extension of time to file for class certification until 11 days after the 90-day period had expired. *See* 661 F.2d at 1279. The defendants noted that "since the time for moving to certify a class had expired, motions for extensions of time in which to file for certification were also precluded." *Id*. The district court refused to grant an extension, and the D.C. Circuit Court affirmed. *Id*. In light of the plaintiffs'

35

failure to act until 11 days after the deadline, the D.C. Circuit Court noted: "Moreover, this was not a situation where [plaintiffs] had failed to 'beat the clock' by a few hours." *Id*.

Plaintiffs filed their Complaint on February 19, 2026. (ECF No. 1.)[12] In their Complaint, Plaintiffs indicated they intend to seek class certification. (*See* Complt., ¶¶ 67-99.) Under Local Rule 23.1(b), Plaintiffs were obligated to move for class certification or seek an extension from the Court by May 20, 2026. They did neither. Plaintiffs have failed to satisfy the obligations of Local Rule 23.1(b). At this point, any motion for class certification, or request for an extension of time to file such motion, would be untimely. For this reason alone, Plaintiffs' class claims should be dismissed. *See Harriott*, 2019 WL 7066631, at *1 (granting motion to strike or dismiss plaintiffs' class allegations because plaintiffs failed to move for class certification by deadline and "also failed to seek an extension from the Court or explain why, before responding to the instant motion, class certification should be saved for a later time"); *Thomas v. Knight*, 257 F. Supp. 2d 86, 88, 91 n.5 (D.D.C. 2003) (ruling on defendants' motions to dismiss "that although the plaintiff has asserted a class action claim, he has failed to file a motion to certify the class within 90 days of the filing of the complaint as required by this Court's Local Rule 23.1(b)" and "[t]herefore, this Court will deny the plaintiff's request for class certification and consider his claim only with respect to himself as an individual").

As another threshold issue, members of a proposed class must be "readily identifiable." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). "[I]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id*.; *see also Bradley v. Gannett Co. Inc.*, Civil Action No. 1:23-cv-1100

---

[12] The Court issued two notices of new case error stating that the Complaint failed to comply with Local Rule 5.1(c), with the second stating: "**Continued non-compliance will result in an Order to Show Cause and/or dismissal of case**." (*See* ECF Nos. 1-3.)

(RDA/WEF), 2024 WL 3905817, at *11 (E.D. Va. Aug. 20, 2024) (granting motion to dismiss because "[g]iven the lack of ascertainability of the Proposed Class . . . the Court concludes that it is appropriate to strike the class allegations from the Amended Complaint"). Plaintiffs' proposed classes are not reasonably defined, and Plaintiffs provide no detail of how they would ascertain or identify members of their proposed classes.

Plaintiffs' proposed classes begin with the need to identify "all applicants, ages 40 and older, who . . . were not hired." (*See* Complt., ¶¶ 67, 75, 83, 91, 92.) But whether an applicant was 40+ when he or she was not hired was not information possessed by Defendants at the time of the decision. And Plaintiffs tacitly concede this in their Complaint, theorizing that Defendants must have used information such as educational and work history "to infer and screen out older applicants" instead of their actual ages. (*See id.*, ¶ 39.)

The multiple remaining parts of the class definitions proposed by Plaintiffs show their class members are unascertainable for other reasons. First, Plaintiffs define their classes as including applicants who applied for "Covered Positions." (*See id.*, ¶¶ 67, 75, 83, 91, 92.) But Plaintiffs definition of "Covered Positions"—"various sales and account management positions"—is vague and noncommittal, leaving Defendants, putative class members, and the Court to speculate as to which particular positions are included. (*Id.*, ¶ 3.)[13] Second, Warren, Bunenko, and Brihmat seek to represent applicants who were "qualified." (*Id.*, ¶¶ 75, 83, 92.) However, the undefined term "qualified" is subjective and not ascertainable.

---

[13] Complicating matters further, Plaintiffs claim in their introduction, for instance, that "Danaher prefers not to hire, and actively eliminates from consideration for hire, older individuals for its *sales, professional, and management positions* based on age." (*Id.*, ¶ 4 (emphasis added).) How this aligns with, modifies, or differs from the proposed class definition is not addressed in the Complaint.

It is also apparent from the face of Plaintiffs' Complaint that they do not plead Rule 23(a)'s requirements that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Take Rule 23(a)(1) as an example. Plaintiffs allege that "[t]he members of the class identified herein are so numerous that joinder of all members is impracticable." (Complt., ¶¶ 69, 77, 85, 94.) The allegation is not only conclusory, but also ignores the requirements of the local rules. This Court's rules instruct that class action complaints must allege "the size (or approximate size) . . . of the alleged class." LCvR 23.1(a)(2)(i). Plaintiffs here have failed to allege facts that would show the size of each of the putative classes. *See Cornette*, 2010 WL 2196533, at *2-3 (granting motion to strike class allegations because plaintiff's allegations "with regard to numerosity" were "plainly inadequate"); *Clark v. Va. Paper Co., Inc.*, No. 77-1832, 1978 WL 13931, at *3, *5 (D.S.C. May 3, 1978) (granting motion to strike class action allegations because plaintiff failed to plead numerosity).

Plaintiffs also offer only conclusory allegations as to Rule 23(a)'s commonality and typicality requirements. Fed. R. Civ. P. 23(a)(2) and (3). In *General Telephone Co. of Southwest*, 457 U.S. at 149-52, an employee claimed that he was deliberately denied a promotion on account of his race and sought to represent a class comprised of all employees and all applicants wrongfully denied jobs. The Supreme Court rejected that composite class for lack of commonality and typicality, explaining:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise

38

unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claim will share common questions of law or fact and that the individual's claims will be typical of the class claims.

*See id*. at 157-58, 161.

There are two ways that a plaintiff can bridge this "conceptual gap" to show commonality among putative class members: (i) claim that the employer used a biased testing procedure; or (ii) offer significant proof that an employer operated under a general policy of discrimination that manifested itself in the same way for all class members. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011). The first has no application here, and Plaintiffs have not pled any facts to suggest Defendants "operated under a general policy of discrimination," much less any policy that "manifested itself in the same way for all class members." Plaintiffs claim that "hiring policies and practices [ ] intentionally give preference to younger applicants solely based on their age" and "[t]hrough Workday and other AI applications, Danaher weeded out older applicants for employment." (Complt., ¶¶ 6, 37.) However, as discussed above, Plaintiffs do not plausibly allege anything of the sort. (*See supra* at Section VI.) Plaintiffs only assert conclusory allegations concerning an alleged policy, with no factual allegations regarding the application or implementation of such an alleged policy in an unlawful manner. *See Talley v. ARINC, Inc.*, 222 F.R.D. 260, 267, 271 (D. Md. 2004) (granting motion to strike class action allegations because plaintiffs' "centralized decision-making theory seems entirely derived from the bald accusations made by the Plaintiffs themselves"); *Brooks v. Circuit City Stores, Inc.*, Civ. A No. DKC 95-3296, 1996 WL 406684, at *5-6 (D. Md. June 17, 1996) (ruling that "Plaintiffs do not meet the commonality requirement necessary for class action certification and the proposed second amended complaint would be futile" because "Plaintiffs have presented no facts establishing a general policy of discrimination"); *see also Saas*, 2024 WL 2113654, at *5 ("[Plaintiff] instead

conclusorily alleges that Defendants 'violated' the ADEA with their purported use of the artificial intelligence.").   Again, Plaintiffs dodge pleading facts regarding a common policy because any such facts would demonstrate the complete *absence* of a "company-wide" policy or practice.  (*See supra* at Section VI.)   Plaintiffs' counsel have conceded elsewhere that hiring decisions are made by individual hiring managers.  *See also Talley*, 222 F.R.D. at 267 ("Furthermore, Plaintiffs have no response to evidence submitted by Defendant [] that reveals that [its] pay and promotion decisions are made by individual managers.").

Moreover, Plaintiffs' allegations show that the claims of putative class members are not susceptible of resolution in "one stroke," as commonality requires.  *See Wal-Mart Stores, Inc.*, 564 U.S. at 349-50.  At the heart of Plaintiffs' claims is their (conclusory) assertion that Defendants "screen[ed] out older applicants." (Complt., ¶ 39.)  But Plaintiffs' proposed classes are comprised of "all applicants" who "were not hired." (*See, e.g., id.*, ¶ 67.)  Even if Plaintiffs' speculation and unsupported assertions about "screen[ing] out older applicants" were true (they are not), that would not provide an across-the-board way to determine why all members of Plaintiffs' proposed classes were not hired.  In particular, it would not account for a putative class member that progressed past the "screening" stage but still was not hired.  *See G.T. v. Bd. of Educ. of Cnty. of Kanawaha*, 117 F.4th 193, 205-06 (4th Cir. 2024) (holding that class failed to satisfy commonality "because Plaintiffs do not identify a common contention central to the validity of all class members' claims," including "as their alleged harms involve different practices at different stages of the special education process").

An individualized analysis of each of the employment decisions challenged by Plaintiffs is required to determine if age discrimination was the intentional, but-for reason for those decisions, and the same would be true for each and every employment decision about which a

40

putative class may complain, including "mini-trials" to "examine[] the specifics of the relevant position, the qualifications required, and the individual decision-maker." *See Bradley*, 2024 WL 3905817, at *11. When such individualized determinations are necessary, there is no commonality and no basis for a class action. *See Talley,* 222 F.R.D. at 268 ("Plaintiffs have failed to demonstrate the existence of any discriminatory pattern or practice that would bind the proposed classes together on the question of liability. What remains is an aggregation of individual discrimination claims that require-and-deserve-individual adjudication. As a consequence, there is no basis for a finding of commonality as to the proposed classes."); *Brooks*, 1996 WL 406684, at *5 (finding that "the claims of each Plaintiff will require a factfinder to determine whether the legitimate nondiscriminatory reason presented by [defendant] for each employment action was a pretext for discrimination, that is, whether discrimination was a motivating factor in the employment action" and "an inquiry into the requirements of the particular position at issue, a comparison of the qualifications of the potential applicant versus the successful applicant, and a determination of the motivation of the supervisor in each case"); *cf. Artis v. Yellen*, 307 F.R.D. 13, 25 (D.D.C. 2014) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 355) (ruling that although plaintiffs "vaguely allege the existence of discriminatory policies and practices," nevertheless, "managers set the standards and methods applicable to promotions," which "shows nothing but a general policy 'of allowing discretion by local supervisors over employment matters'").

This same shortfall also infects Plaintiffs' representation that they are typical representatives of the proposed classes. *See Artis*, 307 F.R.D. at 27 ("Plaintiffs' claims lack typicality for the same reason they lack commonality."); *Valerino v. Holder*, 283 F.R.D. 302, 318 (E.D. Va. 2012) (ruling "that individualized inquiry" as to whether each "individual

41

applicant was denied an employment opportunity for lawful reasons" would "vary for each plaintiff foreclosing any claim that the named Plaintiffs claims are typical"); *Skipper v. Giant Food Inc.*, 68 F. App'x 393, 397 (4th Cir. 2003) (holding that claims would "involve individualized inquiries into whether each person was qualified for the particular position for which that person applied" such that "district court did not err in holding plaintiffs failed to satisfy the commonality and typicality requirements of Rule 23(a)"). Plaintiffs fail to plead typicality because they do not "present the factual scenario of a discriminatory practice being applied so as to broadly discriminate against persons in the identical manner." *See Talley*, 222 F.R.D. at 268; *see also Clark*, 1978 WL 13931, at *4 ("Plaintiff has neither alleged nor offered facts tending to show that defendant has engaged in similar (alleged) practices with respect to its other female employees. Thus she did not show that there are other members of the class she purports to represent, and it cannot be said their claims are typical of the claims or defenses of the class.").

Plaintiffs' failure to properly plead the other requirements of Rule 23(a) also precludes their ability to serve as adequate representatives of the proposed classes under Rule 23(a)(4). *See Cornette*, 2010 WL 2196533, at *3 ("In light of the inadequacy of the plaintiff's allegations with regard to the first three requirements of Rule 23(a), this Court cannot find that the plaintiff would adequately protect the interests of a putative class.").

Rule 23(b)(2) is unavailable to plaintiffs who seek individualized monetary relief. *See Wal-Mart Stores, Inc.*, 564 U.S. at 360-61 (holding that Rule 23(b)(2) certification is not permitted where "each class member would be entitled to an individualized award of monetary damages"). Here, Plaintiffs cannot sufficiently plead a Rule 23(b)(2) class because they ask that each class member be awarded individualized relief for front pay benefits, back pay (including

42

interest and benefits), and emotional distress, exemplary, punitive, and other damages.  (Complt., Prayer for Relief); *see Artis*, 307 F.R.D. at 27 ("Because plaintiffs' proposed class brings claims for backpay, it may not be certified under Rules 23(b)(1) or (b)(2)."); *Cheng v. Liu*, No. 23-1806, 2024 WL 3579606, at *3-4 (4th Cir. July 29, 2024) (holding that certification under Rule 23(b)(2) was improper because "an individualized determination of damages will be necessary").

Rule 23(b)(3) requires that common issues "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The "predominance" requirement of Rule 23(b)(3) is "far more demanding" than Rule 23(a)'s commonality requirement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  As described above, Plaintiffs' Complaint allegations show that they cannot satisfy even the lower standard of commonality under Rule 23(a), much less the more rigorous predominance requirement of Rule 23(b)(3).  *See Artis*, 307 F.R.D. at 28 ("In the absence of any common issue, it cannot be said that common issues predominate.  Accordingly, a (b)(3) class is also inappropriate."); *Brooks*, 1996 WL 406684, at *6 ("To the extent certification is sought under (b)(3), Plaintiffs certainly do not satisfy the requirement that common questions of law or fact predominate.").

Courts have ruled that the highly individualized and fact-specific issues regarding liability in Plaintiffs' asserted class claims prevent them from properly pleading a putative class under Rule 23(b)(3).  *See Talley*, 222 F.R.D. at 270-71 ("Certification is not proper under [Rule 23(b)(3)] because of the individualized liability inquiries involved with determining whether each class member was denied advancement and promotional opportunities for discriminatory reasons. . .  The issue of liability will depend on the circumstances surrounding each individual employment decision, relating to each member.  This will require individualized evidence as to the qualifications of the persons who applied for and received promotions, as well as the

43

qualifications of the persons who were denied those promotions."); *Adams v. Henderson*, 197 F.R.D. 162, 164, 172 (D. Md. 2000) (granting defendant's motion to deny class certification because "[t]he issue of liability will depend on the circumstances surrounding each individual employment decision, relating to each class member," which "will require individualized evidence as to the qualifications of the persons who applied for and received promotions, as well as the qualifications of the persons who were denied those promotions"); *cf. Garcia v. Veneman*, 211 F.R.D. 15, 23-24 (D.D.C. 2002) ("Numerous cases have held that decentralized, locally autonomous subjective decision-making practices present predominately *individual*, not *common*, issues in discrimination cases. . . . The instant case, if allowed to proceed as a class action, would quickly devolve into hundreds or perhaps thousands of individual inquiries about each claimant's particular circumstances. . . . Even if the presence of classwide discrimination were established, individual issues would be much more important to any claimant's recovery.").

Coupled with liability, Plaintiffs' damages claims exacerbate the individualized issues that predominate over any issues common to the class. *Adams*, 197 F.R.D. at 171-72 ("Certification is not proper under [Rule 23(b)(3)] because of the individualized liability inquiries involved with determining whether each class member was denied advancement and promotional opportunities for discriminatory reasons, and the individualized damages inquiries that inevitably accompany a claim for compensatory and punitive damages."). The need for individualized determinations of liability and damages therefore precludes Plaintiffs pleading that common issues of law or fact predominate as required by Rule 23(b)(3). [14]

---

[14] To the extent they attempt to do so, Plaintiffs cannot overcome these issues by relying on a supposed "pattern or practice" claim because any pattern and practice allegations they purport to make are "conclusory[,] speculative, . . . [and] insufficient to establish such a practice." *See Bradley*, 2024 WL 3905817, at *11 n.23.

Plaintiffs' Complaint does not allege any facts showing how Plaintiffs' allegations can fit plausibly within the contours of Rule 23. As the Supreme Court recognized in *Twombly*, "a plaintiff with ''a largely groundless claim'' [cannot] be allowed to ''take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.''" 550 U.S. at 558 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). Before subjecting Defendants and this Court to potentially years of protracted proceedings, Plaintiffs must provide meaningful factual allegations making it plausible that they can prevail on the class claims. Plaintiffs have not done so in their Complaint. Accordingly, their class allegations should be dismissed.

## CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court grant their Motion and dismiss Plaintiffs' Complaint, in its entirety.

Dated: May 29, 2026                        Respectfully submitted,

                                           SEYFARTH SHAW LLP


                                           By: */s/ Samantha L. Brooks*
                                           Samantha L. Brooks, DC Bar 1033641
                                           sbrooks@seyfarth.com
                                           SEYFARTH SHAW LLP
                                           975 F. Street, N.W.
                                           Washington, DC 20004
                                           Telephone:   (202) 463-2400
                                           Facsimile:   (202) 828-5393

                                           Christopher J. DeGroff, *pro hac vice forthcoming*
                                           CDeGroff@seyfarth.com
                                           Michael D. Jacobsen, *pro hac vice forthcoming*
                                           mjacobsen@seyfarth.com
                                           SEYFARTH SHAW LLP
                                           233 South Wacker Drive
                                           Chicago, Illinois 60606
                                           Telephone:   (312) 460-5000
                                           Facsimile:   (312) 460-7000

45

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing Statement of Points and Authorities in Support of Defendants' Motion to Dismiss was filed by CM/ECF, this 29th day of May 2026, with electronic notification to all counsel of record.

By: */s/ Samantha L. Brooks*
Samantha L. Brooks, DC Bar 1033641
sbrooks@seyfarth.com
SEYFARTH SHAW LLP
975 F. Street, N.W.
Washington, DC  20004
Telephone:    (202) 463-2400
Facsimile:    (202) 828-5393

46